**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RIGOBERTO BAUTISTA FLORES, *on behalf of himself, FLSA Collective Plaintiffs and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>536 J AND J CORPORATION f/d/b/a 86TH CORNER WINE & LIQUOR CO, and HOWARD SHIM,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, RIGOBERTO BAUTISTA FLORES ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, 536 J AND J CORPORATION f/d/b/a 86TH CORNER WINE & LIQUOR CO, (the "Corporate Defendant"), and HOWARD SHIM (the "Individual Defendant" and together with the Corporate Defendant, the "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages for hours worked in excess of forty (40) per week, due to Defendants' failure to pay the correct overtime rate, (2) unpaid overtime wages, due to timeshaving, (3) unpaid overtime wages, due to improper rounding, (4) liquidated damages; and (5) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages for hours worked in excess of forty (40) per week, due to Defendants' failure to pay the correct overtime rate, (2) unpaid wages, including overtime, due to timeshaving, (3) unpaid wages, including overtime, due to improper rounding, (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

3. Plaintiff brings individual claims pursuant to 42 U.S.C. § 1981 because Defendants unlawfully discriminated against him on the basis of his race and national origin. As a result of Defendants' violations of § 1981, Plaintiff is entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages, and (3) attorneys' fees and costs.

4. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members as required by the Federal Insurance Contribution Act ("FICA"). Defendants' paid Plaintiff and Class Members in cash, without accompanying proper wage statements and without filing W-2.

5. Plaintiff also alleges that, in retaining the above employer payroll tax sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

6. Plaintiff brings further individual claims that, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), due to Defendants' unlawful discrimination against him on the basis of his race and national origin, he is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

7. Plaintiff brings further individual claims that, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. ("NYCHRL"), due to Defendants' unlawful discrimination against him on the basis of his race and national origin, he is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, 1343, and 42 U.S.C. § 1981. The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

10. Plaintiff RIGOBERTO BAUTISTA FLORES is a resident of New York County, New York.

11. Corporate Defendant 536 J AND J CORPORATION is a domestic business corporation organized under the laws of the State of New York, with its former principal place of

business and a current address for service of process both located at 536 Columbus Avenue, New York, NY 10024.

12. Individual Defendant HOWARD SHIM is the owner and principal of Corporate Defendant 536 J AND J CORPORATION. Individual Defendant HOWARD SHIM exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class Members during their employments with Corporate Defendant 536 J AND J CORPORATION. Individual Defendant HOWARD SHIM exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class Members during their employments with Corporate Defendant 536 J AND J CORPORATION. At all relevant times, employees could complain to Individual Defendant HOWARD SHIM directly regarding any of the terms of their employments with Corporate Defendant 536 J AND J CORPORATION, and Individual Defendant HOWARD SHIM would have the authority to effect any changes to the quality and terms of employees' employments. At all relevant times, Individual Defendant HOWARD SHIM directly reprimanded any employee who did not perform his duties correctly. At all relevant times, Individual Defendant HOWARD SHIM exercised functional control over the business and financial operations of Corporate Defendant 536 J AND J CORPORATION. At all relevant times, Individual Defendant HOWARD SHIM had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

13. Individual Defendant HOWARD SHIM was a founder and original owner of a wine and liquor store located at 536 Columbus Avenue, New York, NY 10024 ("86th Corner Wine & Liquor Co"), which he opened sometime around 1992 to 1993. Individual Defendant HOWARD

SHIM operated the store through Corporate Defendant 536 J AND J CORPORATION and subsequently sold the business to another corporation in or around August 2023.

14. At all times of their ownership and operational control, Defendants operated their business with multiple policies which all resulted in a failure to compensate employees all their properly owed wages.

15. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.00 and engaged in interstate commerce. Therefore, at all relevant times, Corporate Defendant was an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and all regulations thereunder.

16. At all relevant times, Corporate Defendant engaged in interstate commerce. At all relevant times, Corporate Defendants sold wines, liquors, beers, and spirits which were imported into New York, purchased by Defendants from vendors located both within and outside of New York State. At all relevant times, Defendants required Plaintiff and other employees to sell these imported goods. Additionally, Defendants required Plaintiff and other employees to clean and mop their store using cleaning products shipped from outside New York State.

17. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

18. At all relevant times, Defendants employed at least 40 employees as defined under the NYLL.

19. At all relevant times, Defendants were employers of Plaintiff and Class Members within the meaning of NYLL §§ 2 and 651.

20. At all relevant times, Plaintiff and Class Members were employees of the appropriate Defendants, within the meaning of NYLL §§ 2 and 651.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

21. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to cashiers, stock persons, counter employees, porters, and delivery persons) employed by Defendants on or after the date that is six years and two-hundred-and-twenty-eight days (pursuant to NY's Executive Order tolling during the COVID pandemic) before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) their proper wages for hours worked in excess of forty (40) per week, due to Defendants' failure to pay the correct overtime rate, (ii) their proper wages, including overtime, due to timeshaving, and (iii) their proper wages, including overtime, due to improper rounding.

23. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

24. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, (including but not limited to

cashiers, stock persons, counter employees, porters, and delivery persons) employed by Defendants on or after the date that is six years and two-hundred-and-twenty-eight days (pursuant to NY's Executive Order tolling during the COVID pandemic) before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

25. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

27. Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper overtime wages for hours worked in excess of forty (40) per week, due to Defendants' failure to pay the correct overtime rate; (ii) failing to pay proper wages, including overtime, due to timeshaving; (iii) failing to pay proper overtime wages due to improper rounding; (iv) failing to provide wage and hour notices to Class Members upon hiring and as legally required thereafter; (v) failing to provide proper wage

statements for each payment period; and (vi) failing to pay employer payroll taxes for Plaintiff and Class Members as required by the FICA. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect

to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, due to improper rounding;

f) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked, due to timeshaving;

g) Whether Defendants paid Plaintiff and Class Members the proper overtime compensation at the premium rate of one and one-half times the regular rate of pay, under NYLL;

h) Whether Defendants paid Plaintiff and Class Members their wages owed for all hours worked;

i) Whether Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members as required by the FICA;

j) Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of NYLL; and

k) Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members per requirements of NYLL.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

32. In or around March 2000, Defendants hired Plaintiff to work for their liquor store located at 536 Columbus Avenue, New York, NY 10024 as an employee with a multifaceted role that included responsibilities of Delivery Person, Counterman, Cashier, and Stocker. Plaintiff's employment with Defendants was terminated in or around September 2023, when Defendants sold the business.

33. Defendants scheduled Plaintiff to work six (6) days per week, from 11:00 a.m. to 7:00 p.m. on Tuesday, Friday and Saturday, from 11:00 a.m. to 6:00 p.m. on Wednesday, Thursday, and from 12:00 p.m. to 6:00 p.m. on Sunday for a total of forty-five (44) hours per week. At all relevant times, Plaintiff worked his scheduled hours plus additional hours, which went uncompensated. Defendants required the relevant FLSA Collective Plaintiffs and Class Members to work similar schedules and similar hours in excess of their schedules.

34. During the relevant period, Plaintiff's hourly rate was supposed to be $13.50 through December 2019, and $15.00 beginning in January 2020. Defendants similarly paid the relevant FLSA Collective Plaintiffs and Class Members at similar rates.

35. At all relevant times, Defendants compensated Plaintiff in cash every week, without proper paystubs or wage statements. FLSA Collective Plaintiffs and Class Members were similarly compensated in cash every week without proper paystubs or wage statements.

*Plaintiff's Incorrect Overtime Wage Claims*

36. Defendants did not pay Plaintiff, FLSA Collective Plaintiffs, and Class Members the correct overtime premiums for hours worked over forty (40) in a workweek during their employment. For the overtime hours, Defendants compensated Plaintiff, FLSA Collective Plaintiffs, and Class Members at an incorrect overtime rate. As an example, for the workweek of December 16, 2019, Defendants compensated Plaintiff for 43 hours of work (even though Plaintiff worked more hours), including 40 hours at the then minimum hourly wage rate of $13.50 and the remaining 3 hours at the incorrect overtime wage rate of $18.00, for a total payment of $594.00. If Defendants had paid Plaintiff's overtime hours at a proper overtime rate of 1.5 times the regular hourly rate ($20.25/hr), Plaintiff would have been paid a total of $600.75.

37. Similarly, at all relevant times FLSA Collective Plaintiffs and Class Members regularly worked in excess of forty (40) hours per workweek but did not receive overtime premiums at the correct rate for hours worked in excess of forty (40) a week.

38. Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class Members in violation of FLSA and NYLL.

*Plaintiff's Timeshaving and Improper Rounding Claims*

39. Throughout his employment, Plaintiff was required by Defendants to work, on average, a total of thirty (30) minutes before and after his scheduled shift each day. However, Plaintiff was never compensated for this time, as he was paid only for his scheduled hours. As a result, Plaintiff worked an average of three (3) unpaid overtime hours per week. FLSA Collective Plaintiffs and Class Members were similarly required to work off the clock each day but were only compensated for their scheduled shifts.

40. Throughout his employment, although Plaintiff worked without any meal breaks, Defendants deducted three (3) hours per week for meal breaks. Similarly, FLSA Collective Plaintiffs and Class Members never had any meal breaks but were deducted three (3) hours per week for meal breaks.

41. Defendants consistently rounded down Plaintiff's total work hours in Plaintiff's time records and compensated him only for the rounded and scheduled hours. Throughout his employment, when Plaintiff forgot to clock in or was unable to do so because Defendants did not allow him to clock in during busy periods in the store, Defendants manually recorded falsely reduced hours on his time sheets. In particular, every Sunday, although Plaintiff began his shift at approximately 11:00 a.m. and finished his shift after 6:00 p.m., his clock-in and clock-out times

were handwritten by Individual Defendants as 12:00 p.m. and 6:00 p.m. respectively, resulting in a consistent rounding down of Plaintiff's hours. Defendants' rounding was in their favor, and in detriment to Plaintiff. FLSA Collective Plaintiffs and Class Members were similarly unable to record all their clock in and out times accurately and had their actual hours rounded by Defendants.

42. Defendants' awareness and willfulness is obvious, based on the fact that Defendants (i) required Plaintiff and Class Members to work over scheduled hours, and (ii) set Plaintiff's and Class Members' pay salaries excluding timeshaved and rounded overtime hours.

*Discrimination Claims*

43. Plaintiff is of Latino ethnicity.

44. Throughout his employment, Plaintiff was regularly discriminated against by Individual Defendant HOWARD SHIM, who is of non-Latino ethnicity, on the basis of his race and national origin. Specifically, Individual Defendant HOWARD SHIM regularly subjected Plaintiff to a hostile work environment and discrimination through verbal harassment, which was always based on Plaintiff's race and/or national origin.

45. Individual Defendant HOWARD SHIM regularly referred to Plaintiff as a "Perro" (meaning "dog" in Spanish) and regularly told him to "grab tequila and go to Mexico".

46. As a result of Defendants' discrimination, Plaintiff suffered from past and future emotional distress.

*Plaintiff's WTPA Violations Claims*

47. Plaintiff and Class Members never received wage statements that were required under NYLL. Defendants failed to provide Plaintiff and Class Members with wage notices at hiring and at dates of all wage changes thereafter.

48. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020)

49. Moreover, by failing to provide wage notices and statements that disclosed Plaintiff's non-exempt status, regular hourly rate, overtime rate, and hours worked, Defendants prevented Plaintiff from identifying unpaid overtime, thereby causing the loss of overtime wages they would have otherwise claimed:

> In support of their Wage Notice and Wage Statement Claims, Plaintiffs allege that, by failing to apprise them "of their non-exempt status, regular hourly rate, overtime rate, and regular hours and overtime hours, . . . Plaintiffs were deprived of overtime due." (*Id.* ¶ 199). By failing to include the regular and overtime rate of pay and other required information in the wage notices and wage statements, Plaintiffs allege that Defendants denied them of both "the ability to identify their wage deficiencies earlier, preventing efforts to correct the deficiency of being wrongfully deprived of overtime pay," and "thousands of hours of overtime pay over a course of years." (*Id.* ¶¶ 200-201). Had Defendants complied with NYLL §§ 195(1)(a) and (3), Plaintiffs allege that they "would have immediately realized they were entitled to overtime and would have identified the wage deficiency to Defendants and rectified it." (*Id.* ¶ 201; see *id.* ¶ 200). Instead, "Plaintiffs labored under the false impression they were not eligible for overtime for years."

*Herrera v. Comme Des Garçons, Ltd.*, 2024 U.S. Dist. LEXIS 186715, at *4-5 (S.D.N.Y. Sep. 11, 2024)

50. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

51. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

52. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

53. Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with wage statements entailed "concrete, downstream consequences" involving monetary injury. Recording of wages and hours on the W-2 forms would have increased Plaintiff's and Class Members' entitlement to Social Security benefits. Because the absence of wage statements prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

54. Courts agree that the nonreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he Plaintiffs' real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

55. In *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993) whether the court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

56. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants never reported what they actually paid Plaintiff and Class Members. Another problem is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same — unavailable social security benefits.

*Plaintiff's Breach of Contract and Unjust Enrichment Claims*

57. In violating the Internal Revenue Code by failing to provide W-2 forms, Defendants breached their contract with Plaintiff and Class members to pay the employer's share of Social Security and Medicare taxes for each employee.

58. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class members.

59. As a result, Plaintiff and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

60. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

61. Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

62. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper overtime wages, due to incorrect overtime rate, in violation of the FLSA and the NYLL.

63. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to improper rounding, in violation of the FLSA and the NYLL.

64. Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs and the Class Members their proper wages, including overtime, due to timeshaving, in violation of the FLSA and the NYLL.

65. Defendants knowingly and willfully operated their business with a policy of failing to pay employer payroll taxes for Plaintiff and Class Members, in violation of FICA, which constitutes a breach of contract.

66. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

67. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM
## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

68. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

69. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

71. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper overtime wages, due to incorrect overtime rate.

72. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

73. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to improper rounding.

74. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

75. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

76. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation and unpaid wages, plus an equal amount as liquidated damages.

77. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

78. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## DISCRIMINATION UNDER THE 42 U.S.C. § 1981

**(brought on Plaintiff's behalf only)**

79. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

80. The 42 U.S.C. § 1981 states in relevant part as follows:

> (a) Statement of equal rights
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

81. Defendants violated the 42 U.S.C. § 1981, when they discriminated against Plaintiff on the basis of his race and national origin. Individual Defendant HOWARD SHIM regularly subjected Plaintiff to harassment and discrimination on the basis of his race and national origin.

82. Defendants' discriminatory conduct was in willful disregard of the provisions of the 42 U.S.C. § 1981.

83. As a direct and proximate result of Defendants' willful disregard of the 42 U.S.C. § 1981, Plaintiff suffered damages in the form of lost past and future emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## COUNT III
## VIOLATION OF THE NEW YORK LABOR LAW

84. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

85. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

86. At all relevant times, Defendants engaged in a policy and practice of not paying Plaintiff and Class Members their proper overtime wages, due to incorrect overtime rate, in direct violation of the NYLL.

87. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to timeshaving, in direct violation of the NYLL.

88. At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiff and Class Members all wages, including overtime due to improper rounding, in direct violation of the NYLL.

89. Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff and Class Members, as required by the NYLL § 195(1).

90. Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff and Class Members with every wage payment, as required by the NYLL § 195(3).

91. Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL.

**COUNT IV**
**BREACH OF CONTRACT**

**(brought individually and on behalf of the Class)**

92. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

93. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything

which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract].” *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

94. When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

95. Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file W-2s. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

**COUNT V**
**<u>UNJUST ENRICHMENT</u>**
**(brought individually and on behalf of the Class)**

96. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

97. To state a claim for unjust enrichment, a plaintiff must allege that: “(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.” *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 (2012) (internal quotations omitted).

98. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants’ employer FICA

contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

99. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

**COUNT VI**
**DISCRIMINATION UNDER THE**
**NEW YORK STATE HUMAN RIGHTS LAW**

**(N.Y. Exec. Law § 292, *et seq*.)**
**(brought on Plaintiff's behalf only)**

100. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

101. The New York State Executive Law § 296(1)(a) provides that:

> "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

102. Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of his race and national origin. Individual Defendant HOWARD SHIM regularly subjected Plaintiff to harassment and discrimination on the basis of his race and national origin.

103. Defendants' discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

104. As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost past and future emotional distress. Plaintiff seeks all

applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT VII**
**DISCRIMINATION UNDER THE**
**NEW YORK CITY HUMAN RIGHTS LAW**

**(N.Y.C. Admin. Code § 8-101, *et seq.*)**
**(brought on Plaintiff's behalf only)**

105. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

106. The New York City Administrative Code §8-107(1) provides that:

> "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

107. Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff on the basis of his race and national origin. Individual Defendant HOWARD SHIM regularly subjected Plaintiff to harassment and discrimination on the basis of his race and national origin.

108. Defendants' discriminatory conduct was in willful disregard of the provisions of the NYCHRL.

109. As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost past and future emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. A declaratory judgment that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class Members;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of unpaid overtime premiums, due to failure to pay the correct overtime rate, due under the FLSA and the NYLL;

e. An award of unpaid wages, including overtime, due to timeshaving, due under the FLSA and the NYLL;

f. An award of unpaid wages, including overtime, due to improper rounding, due under the FLSA and the NYLL;

g. An award of unpaid overtime compensation due under the FLSA and the NYLL;

h. An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

i. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the FLSA;

j. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

k. An award of compensatory damages, damages for egregious emotional distress, and all other penalties the Court deems appropriate as a result of Defendants' unlawful discriminatory practice against Plaintiff, pursuant to the 42 U.S.C. § 1981, NYSHRL and NYCHRL;

l. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

m. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' fees, expert fees, and statutory penalties;

n. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

o. Designation of this action as a class action pursuant to F.R.C.P. 23;

p. Designation of Plaintiff as Representative of the Class; and

q. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: December 8, 2025

Respectfully submitted,

By: */s/ C.K. Lee*

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*